TEMPLE PUMP CO. v. GOSS PUMP & RUBBER BUCKET MANUF'G CO.

(Circuit Court of Appeals, Seventh Circuit. October 2, 1893.)

No. 111.

1. PATENTS FOR INVENTIONS—INFRINGEMENT—CHAIN-PUMP BUCKETS.
Letters patent No. 347,342, issued August 17, 1886, to Sanford A. Goss, for improvement in expansion rubber buckets for chain pumps, consisting of "the rubber bucket, A, having its largest inward diameter at a', thickened at its lower end to form the inward incline, a, whereby it is adapted to be expanded by moving an interior nut in either direction along the supporting link, substantially as described," is not infringed by buckets made on a model different in shape from the drawing in the specification, since the patent, in consideration of the prior state of the

art, should be limited to the exact bucket shown in the drawing referred to as A.

**2. SAME—CONSTRUCTION OF PATENT.**
Where certain claims in an application for a patent have been rejected in the patent office, and the rejection acquiesced in by the inventor, the court will not so construe the claim that is allowed as to make it by implication include the rejected claims.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Bill by the Goss Pump & Rubber Bucket Manufacturing Company against the Temple Pump Company and others. Complainant obtained a decree. Defendant pump company appeals. Reversed.

Statement by WOODS, Circuit Judge:

This appeal is from a decree for an accounting and of perpetual injunction against infringement by the appellant, one of the defendants below, of letters patent No. 347,342, issued August 17, 1886, to Sanford A. Goss, assignor to the appellee, for improvements in expansion rubber buckets for chain pumps. The specification and claim of the patent read as follows:

"Be it known that I, Sanford A. Goss, of Chicago, county of Cook, and state of Illinois, have invented certain new and useful improvements in expansion rubber buckets for chain pumps, of which the following is a full, clear, and exact description, that will enable others to make and use the same, reference being had to the accompanying drawings forming part of this specification. This invention relates to an improvement in that class of pump buckets set forth in letters patent No 305,071, granted to me September 16, 1874. The means for attaching the bucket and link in the present device being the same as that shown in said patent, illustration of said attaching means in this case is unnecessary.

"Figure 1 is a side elevation of a pump bucket embodying my improved features; Fig. 2, a vertical section of the bucket proper; and Fig. 3 shows

FIG 2

the bucket doubled back, so as to permit of the expansion nut being adjusted with facility. Referring to the drawings, A represents a bell-shaped rubber bucket mounted on the screw-threaded link, B. The exterior contour of this bucket is about the same as set forth in the patent above referred to. The improved features consist principally in reversed inclines of the interior of the bucket, so that the expansion cavity has its largest diameter above its lower end, with a gradual diminution in diameter both upwardly and downwardly, or gradually sloping inwardly from the angle or recess, a', and in com-

bining the bucket with a screw-threaded link, and an expansion nut 'adapted to expand the rubber, or present new wearing surfaces, when moved in either direction along the link. Now, by placing the expansion nut, C, having a threaded adjustment on the link, B, in the center of the recess, a', the bucket may be expanded by turning the nut, C, either in an upward or downward direction. The expansion nut is set in recess, a', and for the best wearing results it is first turned or adjusted in the upward direction until it has gradually reached its limit, and the upper part of the bucket has become so much worn that it cannot be any longer expanded in that direction. The nut, C, is then returned to the recess or angle, a', and so adjusted as to bring the bearing surface of the same against the inward incline of the thickened part, a, and thereby expand the lower part of the bucket, and change the exterior bearing or wearing surface, thus not only providing a bucket possessing increased expansive qualities, but also lengthening the life and durability of the same. The thicker part, a, likewise prevents the expanding nut from working off the link. The upper edge of the nut, C, is beveled to correspond to the inner circumferential surface of the bucket, the lower part being slightly beveled or rounded, so as not to present a sharp bearing edge to the bucket. The bucket may be doubled back on the link in the manner illustrated in Fig. 3, in which position it will remain fixed, thus allowing the expanding nut to be readily and conveniently adjusted to a' new position, and, when so adjusted, the bucket is turned back upon the nut, as in Fig. 2, and the rubber or bucket operates as a nut lock, to prevent changing the adjustment, and a guard to prevent the reel or its forks from moving it. The link, B, is provided with the drip groove, b.

"Having thus described my invention, what I claim, and desire to secure by letters patent, is the rubber bucket, A, having its largest inward diameter at a', thickened at its lower end to form the inward incline, a. whereby it is adapted to be expanded by moving an interior nut in either direction along the supporting link, substantially as described."

The objects of the invention in patent No. 305,071 are stated in the specification to be—First, to prevent the bell-shaped rubber from slipping or turning upon the link; and, second, to prevent the nut or washer from becoming loosened, displaced, or turning upon its thread, by striking against the reel of the pump; and the two claims are each for the combination of the link, nut, and rubber as set forth.

The file wrapper of the patent in suit shows that the following claims were first presented: "(1) An expansion bucket for chain pumps provided with the inwardly projecting annular shoulder, a, as and for the purpose set forth. (2) An expansion bucket for chain pumps thickened at the lower end and having the recess, a', as set forth. (3) The combination with an expansion bucket, provided with the shoulder, a, and the recess, a', of the link, B, and the expanding nut, C, whereby said bucket may be expanded by adjusting the nut in either direction on the link B, and the nut prevented from working off and lost, all substantially as set forth." The first and second were "refused on patents to Hathaway, No. 158,075, Dec. 22, 1874, and Miller, No. 304,442, Sept. 2, 1884; the third on Temple, No. 290,282, Dec. 18, 1883;" and thereupon the following were proposed: "(1) In a chain pump the combination of an expansion bucket provided with the inwardly projecting shoulder, a, and the recess,, a', the link, B, and the expanding nut, C, of greater diameter than the opening formed by the inwardly projecting shoulder, a, substantially as described. (2) An expansion bucket having a chamber formed by the recess, a', and the inwardly projecting shoulder, a, having the inner inclined face, substantially as described." These were "held to be answered by Temple and Hathaway, of record, and therefore refused," and thereupon the specification was amended in particulars which need not be stated, and two claims proposed, of which the first was allowed, after a voluntary withdrawal of the second, which was as follows: "(2) The elastic bucket, A, constructed as described, in combination with the link, B, and expansion nut, C, substantially as described."

The respondents admitted making and selling rubber buckets for chain pumps, but in view of the prior art, and of the concessions made by Goss in order to obtain the patent in suit, as shown by the file wrapper, denied both invention and infringement. The prior art, as averred and proved, consists

of the following letters patent, of which illustrative drawings are given: **No.** 158,075, to Hathaway; No. 178,208, to Van Sant; No. 178,735, to Churchill; No. 218,746, to Hoyt; No. 269,809, to Miller; No. 290,282, to Temple; and No. 304,442, to Miller.

*Hathaway 1874.*

*Van Zan't 1876.*

*Churchill '76.*

*Hoyt '79*

*Miller Pat 1882.*

*Miller Pat 1884.*

*Temple 83*

*Goss 1884.*

*Temple '89.*

*Appellant's Bucket*

Mr. Bates, an expert, examined on behalf of the complainant, testified, in substance, that the complainant's bucket is secured to a metal link, on the thread of which a nut travels to expand the bucket; that, as shown in the patent, the interior of the bucket is contracted in both directions from a point of greatest diameter, the lower edge being thickened because the greatest wear comes at that point; that the most important features of the construction are the thickened lower edge, and the fact that the nut is always inside the bucket, so that the rubber acts as a lock, and as a guide to prevent contact of the nut with the reel or its forks; that the buckets of the defendants are of like construction and parts, the interior of the rubber growing smaller in both directions from a point of greatest diameter, and the bottom edge thickened so as to secure all the advantages of the complainant's patent; that the variations of the interior of the bucket are less pronounced than in the buckets of complainant, but that this is a difference of degree merely, and is made up for by the increased size of the nut, which forces the rubber, when in use, to the shape shown in complainant's patent; that in both buckets there must be a downward movement of the nut in order to expand the lower edge; that in each, when the lower edge is worn off, an upward movement of the nut will expand the thick upward portion, so as to compensate for the wear on the lower part; that the complainant's device is not anticipated by any of the patents in evidence; that Temple's second patent shows a bucket which is practically the same as that of the complainant; that it has a rubber, which is thick at the top where it embraces the link, and is thick at the bottom so that the lower edge will draw inward below the nut; that it also has a screw-threaded link and nut thereon, which acts upon the interior of the rubber, and is locked in the position to which it is adjusted by the action of the rubber embracing it, due to the thickness of the lower edge, which also protects the nut from the reel; that in all other respects it acts just as complainant's bucket does; that the variations in the shape of the rubber simply amount to taking material from the inside next to the cavity, and putting it upon the outside, so that the action and effect are the same; that in one figure the cavity is shown to be of uniform diameter, but the thickened lower edge of the rubber is present and acts in the same way as in the other form; that in either the straight or flaring cavity a nut larger than the largest part would produce exactly the same form of cavity shown in the Goss patent, in which there is no limitation upon the size of the expanding nut; that before the date of that patent the forms of link and nut shown were old, and also their use in connection with a concavo-convex rubber, as shown in the Churchill patent, and also an expansion rubber bucket with interior cavity and with thickened lower edge, as shown in one of Miller's patents; that it was also old to effect the expansion of the rubber either by moving the nut or by moving the rubber along the link, as was intended by Churchill, and also to protect the nut by locating it within the cavity of the bucket, as Temple undertook to do in 1883; that in Temple's bucket of 1889, with the straight wall cavity, there is no point which corresponds with the angle or recess, a', of the Goss patent, but that in Fig. 1 the top of the cavity corresponds to all intents and purposes with the point of greatest internal diameter of the Goss patent, because it is the point of greatest internal diameter in the Temple device, and the point at which the wall is thinnest, and from which the nut can be started and moved downward, gradually expanding the rubber, and bringing new surfaces into contact with the well tube; that while not literally the exact rubber shown in the Goss patent, it must be held to be the full mechanical equivalent, especially when used with a large nut; that a nut larger than the cavity of the Temple bucket, started below the top and moved upward, would expand the rubber above it as it moved, and if moved downward would expand that below it as it moved that way, in both particulars the same as in the Goss device; that Goss improved upon prior buckets by adding a reverse incline, so that the rubber could be expanded usefully by moving the nut downward; that in that respect his bucket is distinguished from all prior buckets, and is identical with defendant's bucket; that "the specification of the patent describes the old operation of expanding by an upward movement of the nut, and the new operation of expanding by the downward movement of the nut, in such a mixed-up way that it is hard to tell from the specification whether the patentee

meant that his buckets should have both operations or only the latter one," but that, when the functions and the objects of the invention are considered, it is perfectly clear that the latter operation, namely, the expansion of the rubber by a downward movement of the nut, is sufficient, and, if his patent is to be construed as commensurate with his invention, it will be limited only to his downward movement; that the claim of the patent would seem to indicate the same thing, since it expressly mentions the incline below the point of greatest diameter, and says nothing of the incline above that point,—manifesting an intention to claim simply that which the art shows to be new, "namely, a rubber bucket with a thickened lower end, in combination with a nut and link by which the rubber is expanded as the nut is moved downward;" that it is therefore not essential that the bucket be so constructed as to admit of expansion by an upward movement of the link,—though it makes no difference in this case whether or not that is so, because, owing to the large size of the nut in the bucket of defendants, the rubber is expanded by an upward as well as by a downward movement of the nut from an intermediate position.

The proof shows that in the manufacture of the Goss bucket, from the first, the nuts were made larger in diameter by about a quarter of an inch than the largest diameter of the rubber.

It is conceded that Goss's idea was, as the specification shows, that he still retained the upward expansion of his 1881 bucket; but since he nowhere locates the position of the angle or recess, a', it is insisted by appellee that "what he invented was a rubber bucket constructed 'so that the expansion cavity has its largest diameter above its lower end,' and that his claim is for a rubber bucket 'thickened at its lower end to form the inward incline;'" and that, the device itself being right, a mistaken description of its operation does not nullify or vitiate the patent.

On the other hand, Mr. Temple, one of the respondents, testified, in substance, that the bucket of the defendants was of the form shown in the Temple patent of 1889, of which the diameter of the cavity is greater at the top than at the bottom by about one-sixteenth of an inch; that when the nut is at its highest place on the link the lower edge of the bucket will be of a size to fit the well tube; that when worn away that edge is expanded by moving the nut downward; that in no position on the link will the nut force any other part of the rubber except the lower edge into bearing with the pump tube; that in this form of construction the nut must be larger than the greatest diameter of the cavity, in order to produce by downward movement an expansion of the bucket at its lower edge to an appreciable extent; that the actual diameter of the nut is about one-half greater than the greatest diameter of the cavity, so that when at its topmost position it will force the thin wall of rubber next to it outward, but not enough to produce at that point a bearing against the pump tube; that the buckets of Goss and Temple are radically different in their modes of operation and in the principles of expansion employed,—the one with the reversed inclines having been planned on the theory theretofore employed by Churchill of producing the expansion by moving the nut from a wider to a narrower part of the cavity, and the other of "placing opposite the nut of greater diameter than the cavity a downward constantly increasing thickness of the wall of the rubber;" that this bucket is not expanded by reason of any peculiar formation of its cavity, and would operate in the same manner substantially if the cavity were cylindrical from top to bottom; that the diameter of the nut in the Goss bucket should be equal to the greatest inner diameter of the cavity; that, if made larger, so as to expand the rubber opposite that part of the cavity, the upward movement of the nut from that point would not expand the upper portion of the rubber effectively, for the reason that the previously expanded portion would contract in some degree as the nut advanced; that the nut should be just large enough to fill the cavity, a', of the patent in order to expand the upper part of the bucket with the best result; that in the Goss bucket the wearing surface is constantly opposite or near the expanding nut, wherever placed on the link, and consequently is hard and unyielding to the inequalities of the tube, while the bearing of the defendants' bucket is constantly at the extreme bottom of the rubber, which

is expanded by moving the nut downward from time to time as needed to compensate for wear, and though increased slightly in vertical extent by the wear, yet, being elastic, produces little friction with the pump tube.

The chief contention of the appellant is that the patent sued on describes and claims a rubber bucket that can be expanded to compensate for wear, first by an upward movement, and second by a downward movement, of its interior nut upon the supporting link.

Geo. P. Fisher, Jr., for appellant.

L. L. Bond, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BAKER, District Judge.

WOODS, Circuit Judge, (after making the foregoing statement.) However construed, it is not clear that the patent in suit is for an invention. The thickened lower end of the bucket is its only novel feature, and from that there results no new function, and no advantage which had not been attempted, and in some useful measure accomplished, in the prior art. The angle or recess, a', and the inward incline, a, are mere results of adding the thickened lower end to the Goss bucket of 1884, and in view of that, and of the earlier devices in evidence, it is difficult to see that in adding this thickened extension to the bucket there was employed more than ordinary skill and judgment in adapting means to an end. It is not pretended that the characteristics of rubber which are thereby brought into play—its powers of compression, expansion, and contraction—were not already well understood. Besides the use already made of it in rubber buckets for chain pumps by Goss himself and by Temple, Churchill, Miller, and others, its employment in various arts and manufactures had made its qualities well known, and left but little room for invention merely in devising and adapting new forms to old uses. Witnesses and counsel have not omitted to point out with elaborate precision the various particulars in which the earlier buckets differ one from another, and from the one in suit,—as, for example, the obvious fact that Churchill and Temple both sharpen the lower edge of the rubber, one from the inside and the other from the outside; but such differences can hardly be within the domain of invention, and it is not perceived how the consideration of them can bring much aid to the solution of the question whether or not, after what had already been done by himself and others, Goss, by producing his bucket of thickened lower end and reversed inclines, wrought out a patentable discovery. That question does not depend upon merely accidental differences which, by appropriating the devices, or by following the plain suggestions of the prior art, could easily be made to disappear. The proof shows that the bucket of Goss's first patent was of better form, and operated more successfully, than any of those which preceded it, and yet he claimed nothing for the rubber alone, but only a combination of the rubber and nut and link as set forth; and if there was invention in merely extending and thickening the lower end of that bucket, as claimed in the second patent, for the purpose of admit-

ting, locking, and protecting the nut and forming the recess and reversed inclines, so that the bucket could be expanded both by the upward and downward movement of the nut from its place in the recess, it was certainly not a pioneer discovery, which would justify extending the patent by a liberal construction of the claim to include different forms or designs, though they be capable of performing similar functions, and even of being forced by manipulation of the nut into the form which the patented device has when not itself distorted by a nut of enlarged diameter.

It is contended, however, that besides being first to devise a bucket which could be expanded by a downward movement of an expanding nut, Goss was absolutely the first to effect the expansion without compressing or squeezing the rubber; because, it is said, the buckets patented by Churchill and Temple in 1883 and by Goss in 1884 are expanded "by compressing the rubber against a fixed or nonmovable top projection or flange on the link, operating to oppose the upward movement of the nut and to expand the rubber by squeezing it out." The proposition is not necessarily true of the patents named, and in respect to the Miller device of 1882 seems to be essentially untrue. In any of the devices, if the nut is moved within the cavity without first turning the rubber back or somehow forcing it out of the way, the tendency will be, as the nut advances on the link, to compress the rubber in front, producing in that direction an expansion by "squeezing," while behind the nut there will be a tendency to pull the rubber loose from its attachment on the link, or, if the rubber be free at that end, it will tend to contract behind the nut. But manifestly it is not necessary nor desirable in any of the devices that changes in the position of the nut should be effected solely by pushing it against the thickened rubber in front, although in the form shown in Churchill's drawings probably it would be done mainly in that way. Yet in that form possibly, and certainly in some of the forms shown in the first patents of Temple and Goss, it would be practicable without alteration of parts or structure, by a manipulation which would not be difficult, to put the nut at the top of the bucket's cavity in the first instance, and, the diameter of the nut being greater than the diameter of the cavity, it would make an impression in the wall of rubber similar to the recess, a' of the patent, and from that point, by repeating the manipulation, it could be moved downward whenever necessary to provide new wearing surface between the bucket and the well tube; the resulting compression and expansion being produced, not by the movement of the nut, but by force of the nut in place after the completion of each movement. And in the Miller bucket of 1882 the same results could be accomplished without the necessity of forcing or manipulating the rubber into shapes and modes of operation like those of the patent in suit; because it is to begin with a bucket with the thickened lower edge, which needs only the substitution of a nut for the rubber cone by which it is expanded to make it essentially the same as the bucket manufactured by the appellant. Of course, such a substitution, in view of the existing state of the art, could not be in-

vention. It is pronounced impossible, because, it is said, the effect of a nut in that bucket would be to expand the upper part of the rubber, and loosen it on the link; while it is essential to the complainant's bucket that it be thickened both at the top and bottom, and that the Miller bucket is not of that form. The objection is one of those which do not touch the question of invention, because the upper part of the bucket, if too light or weak, could easily be strengthened enough to overcome a tendency to loosen, and, that once done, the combined action of the nut and rubber would be the same as in the bucket of the appellant, which is alleged to be identical with that of the appellee.

It is, of course, true that a mistaken description, or even misconception, of the operation of a device which is itself fitly described and claimed, does not vitiate a patent; because, as is said in Western Electric Co. v. Sperry Electric Co., 58 Fed. Rep. 186, the patent is upon the device, and not upon the functions, real or supposed. But it is equally true, we suppose, that when a device designed merely for the improvement of a well-advanced art is described as having particular features of construction which are adapted to accomplish specific results or modes of operation, and the claim of the patent is for that device, the features so described are covered by the claim, and may not be rejected, or treated as of secondary importance, in order to extend the patent over other forms or features not described. The claim has been treated in argument as if it read, "A rubber bucket, having its largest diameter," etc., and, if it were so, it might perhaps be construed broadly enough to cover "a rubber bucket thickened at its lower end to form the inward incline, a'," or a bucket with a single incline; but being, as it is, for "the rubber bucket, A," etc., it can be fairly interpreted only as meaning the particular bucket described in the specification, having a cavity with reversed inclines sloping gradually upward and downward from the angle or recess, a', at which, when in use, the nut is to be first placed, and so constructed as to admit of expansion, which shall present new wearing surfaces as needed, first by turning or adjusting the nut gradually in the upward direction, and then (after returning the nut to the recess) by repeating the process in the downward direction. Much of the specification, while explanatory of intended functions, is at the same time descriptive of the device, and there is no reason for doubting that the patentee understood and intended his bucket to be one of two inclines, and capable of effective expansion by alternate upward and downward movements of the nut. It is clear enough, too, that the nut was not designed to be larger than the recess into which it was to go, because the proposed expansion is described as being caused, not by the insertion of the nut, but by moving the nut first upward and then downward from the recess. It was, of course, the right of the appellee, making the rubber smaller if necessary, to enlarge the nut, and also to locate the recess or largest inner diameter at the top of the cavity; but the patent did not, on that account, become different. Seeming to think his patent as pliable as the rubber of his bucket, the appellee has presented two

lines of argument and proof which are at once inconsistent and fallacious: First, as just stated, it has made its own buckets upon a model essentially different from the form patented, and because the appellant has made buckets of similar form the patent has been infringed; and, second, it is manifestly true, as the proof shows, that in the appellant's bucket with either straight or flaring cavity, a nut of the kind used, which is larger than the largest part of the cavity, will produce, when placed intermediate between top and bottom, two inclines like those shown in the Goss patent, and therefore the former is an infringement of the latter. How the same treatment would produce like effects in some of the older buckets, and make of them anticipations of the patent in suit, has already been pointed out.

The conclusion to which these considerations lead is materially strengthened by the history of Goss's application for his second patent, wherein it appears that he presented, and, after they were rejected, abandoned, claims so worded as to have the same meaning which it has been sought to put by construction upon the claim finally presented and allowed. It is insisted that the claim granted is broader than those rejected, and therefore cannot be limited by them; but that is a begging of the question. It can be made broader only by construction, and the effect of the decisions on the subject, as we understand them, is that a claim cannot by construction be enlarged to include the matter of claims in the rejection of which the patentee had acquiesced.

Our conclusion is that, conceding, without deciding, that the patent in suit has in it some measure of invention, it must be limited to the form of bucket described in the specification, and has not been infringed by the appellant. The decree below should therefore be set aside, and the bill dismissed for want of equity, and it is so ordered.