### KELLS v. McKENZIE and others.

#### (Circuit Court, E. D. Michigan. November 7, 1881.)

1. LETTERS PATENT—SCOPE OF REISSUES.

A reissued patent is not valid for everything which might have been claimed in the original patent, nor does its validity depend wholly upon the fact that the new features attempted to be secured thereby were suggested in the models, drawings, or specifications of the original patent.

Hence, where a patentee, in his specifications, claims as his invention a particular part of a machine, and his claims are all limited to that part, a reissue embracing other and distinct portions of the machine is not for the same invention, and is *pro tanto* void, although the designs accompanying the original patent show all the features contained in the reissue.

2. BRICK MACHINE—REISSUE—INVALIDITY.

The first four claims of reissued patent No. 8,867, to Philip H. Kells, for an improvement in brick machines, are void for the reason that they enlarge the scope of the original patent.

3. SAME—SAME—ANTICIPATION.

Reissued patent No. 8,127, to Philip H. Kells, for an improvement in brick machines, is also void, because a machine embodying the invention therein claimed was "on sale" more than two years before the application for the original patent was filed.

In Equity.

This was a suit upon reissued letters patent Nos. 8,867 and 8,127, for improvements in brick machines. Of reissue No. 8,867 defendants were charged with having infringed the following claims:

(1) A horizontal brick or tile machine, constructed with a tub supported at its ends in the standards; and with a nose-piece or die-holder on the front extension. (2) The combination of the front standard, supporting the extremity of the tub, a nose-piece attached directly to said standard, and a die secured to the nose-piece; all substantially as herein described.

Of reissue No. 8,127 they were charged with having infringed seven claims, not necessary to be here set forth.

*Thomas S. Sprague,* for complainant.

*George H. Lothrop,* for defendants.

BROWN, D. J. The machine described in complainant's model and specifications consists of a horizontal tub of iron, supported by two standards, one at the front and one at the rear end, bolted together so as to prevent the pressure of the clay from forcing them apart. Upon the rear end of the tub is a hopper for receiving clay, and through its center is a shaft armed with blades set in a spiral position, the revolution of which not only puddles the clay but forces it forward through the tub and through a nose-piece, at the end of which are inserted dies for the moulding of the clay in proper shape as it passes out of the machine. Behind the rear standard are two cog-wheels used for turning the shaft.

The first objection taken to reissue No. 8,867 is that it is not for the same invention as that covered by the original patent, and is therefore void. To determine this question it is necessary to consider with some care what the powers of the commissioner are with respect to reissuing patents, and to draw the line (often a very difficult task) between that which is and that which is not the same invention. By the fifty-third section of the act of 1870 (Rev. St. § 4916)—

"Whenever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a new patent for the same invention, or in accordance with the corrected specifications, to be issued to the patentee, etc. * * * But no new matter shall be introduced into the specification, nor in case of a machine patent shall the model or drawings be amended, except each by the other; but when there is neither model nor drawing, amendments may be made upon proof satisfactory to the commissioner that such new matter or amendment was a part of the original invention, and was omitted from the specification by inadvertence, accident, or mistake, as aforesaid."

Under this section it is now settled that the decision of the commissioner reissuing the patent is final and conclusive, and is not subject to review in any court, except as to the identity of the invention. But if it be apparent upon the face of the patent that he has exceeded his authority and has thus acted without jurisdiction, and that there is a manifest repugnancy between the old and new patent, then it must be held as a matter of legal construction that the new patent is not for the same invention as that embraced and secured in the original patent. Under the language of the statute the commissioner can only authorize a reissue when the patent is inoperative or invalid by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new. But in *Seymour* v. *Osborne*, 11 Wall. 544, it was said by Mr. Justice Clifford, in delivering the opinion, that—

"He may, doubtless, under that authority, allow the patentee to redescribe his invention, and to include in the description and claims of the patent not only what was well described before, but whatever else was suggested or substantially indicated in the specification or drawings, which properly belong to the invention as actually made and perfected."

This case and that of *Battin* v. *Taggert*, 17 How. 74, have very generally been accepted by patentees as authority for the proposition that a patent might be reissued so as to cover everything suggested in the drawings in the original patent, although the claims and the introductory statement of the invention may have had reference solely to another portion of the machine, and other persons might be thus led to suppose that the patentees regarded nothing else as his invention or consented to abandon his right to the remainder to the public.

The cases in the supreme court are not easily reconcilable, more probably from the difficulty of understanding the exact question decided, in the absence of drawings and models, than from any change of view as to the law, and the cases in the circuit courts are in hopeless confusion. The tendency of later cases in the supreme court, however, has been to hold the patentees to a much more rigid rule than that indicated in *Seymour* v. *Osborne*, and the court has frequently expressed its disapproval of the practice which has grown up of claiming everything which might have been claimed in the original patent, to the detriment of those who may have acted upon the supposition that such claims had been abandoned to the public. Thus, in *Russell* v. *Dodge*, 93 U. S. 460, the original patent was for a pro-

cess of treating bark-tanned lamb and sheep skin by means of a compound in which heated fat liquor was an essential ingredient. This patent was surrendered and reissued for the use of fat liquor in any condition, hot or cold, in the treatment of leather, and for the process of treating bark-tanned lamb or sheep skin by means of a compound in which fat liquor was the principal ingredient. The state of the liquor was not mentioned as essential to the treatment or accomplishment of any of the results sought. It was only stated as a thing to be desired that the liquor should be heated, and that it would be preferable that other ingredients were mixed with the heated liquor to make the compound mentioned. The court held the reissue void, upon the ground that the use of the liquor hot or cold was an expansion of the original patent, which required it to be hot. And this, although the patentee was the first to discover that fat liquor, in any condition, could be used for the purpose specified. It was said—

" That as a reissue could only be granted for the same invention embraced by the original patent, the specification could not be substantially changed, either by the addition of new matter or the omission of important particulars, so as to enlarge the scope of the invention as originally claimed. The origina patent was not inoperative nor invalid from any defective or insufficient specification. The description given of the process claimed was, as stated by the patentee, full, clear, and exact, and the claim covered the specification; the one corresponded with the other. The change made in the old specification, by eliminating the necessity of using the fat liquor in a heated condition, and making in the new specification its use in that condition a mere matter of convenience, and the insertion of an independent claim for the use of fat liquor in the treatment of leather generally, operated to enlarge the character and scope of the invention."

So, in *Powder Company* v. *Powder Works*, 98 U. S. 126, it was held that letters granted for a certain process of exploding nitro-glycerine would not support reissued letters for a composition of nitro-glycerine and gunpowder and other substances, even though the original application claimed the invention of the process and the compound. In this case Mr. Justice Bradley says:

" The specification may be amended so as to make it more clear and distinct, the claim may be modified so as to make it more conformable to the exact rights of the patentee, but the invention must be the same. So particular is the law on this subject that it is declared that no new matter shall be introduced into the specification. This prohibition is general, relating to all patents, and by 'new matter' we suppose to be meant new substantive matter, such as would have the effect of changing the invention, or of introducing what might be the subject of another application for a patent. The danger to be provided against was the temptation to amend the patent so as to cover im-

provements which might have come into use, or might have been invented by others after its issue. The legislature was willing to concede to the patentee the right to amend his specification so as fully to describe and claim the very invention attempted to be secured by his original patent, and which was not fully secured thereby in consequence of inadvertence, accident, or mistake, but was not willing to give him the right to patch up his patent by the addition of other inventions, which, *though they might be his, had not been applied for by him, or, if applied for, had been abandoned or waived.* For such inventions he is required to make a new application, subject to such rights as the public and other inventors may have acquired in the mean time."

A case bearing more directly upon the one under consideration than any other one I have met is that of the *Manuf'g Co.* v. *Ladd,* 102 U. S. 408, and, as it contains the latest expression of the supreme court upon this subject, it is entitled to great weight. The original patent was for a water-wheel of specific construction and form, with an annular chamber, a peculiar gate and guide arrangement, and a contrivance for adjusting the wheel on the step. There were three claims to the patent. After a lapse of twelve years and a half the patentee obtained a reissue with eleven different claims of a sweeping character, which, taken literally, would have given him a monopoly of all water-wheels having simultaneously an effective inward and downward flow and discharge, whatever might be the shape of the floats or of the crown. The court considered itself bound to consider the claims of the reissued patent in accordance with the limitations of the invention in the original patent, and held the excess to be void. In delivering the opinion Mr. Justice Bradley spoke very forcibly of the evils arising from expanding claims in reissued letters patent, and in commenting upon the statute observed:

"It was never intended to allow a patent to be enlarged, but to allow the correction of mistakes inadvertently committed, and the restriction of claims which had been improperly made, or which had been made too broad,—just the contrary of that which has come to be the practice. In a clear case of mistake, (not error in judgment,) the patent may undoubtedly be enlarged; but that should be the exception and not the rule, whereas the enlargement of claims has become the rule, and their contraction the exception."

And in speaking of the reissue in that case he says:

"The invention of a wheel was not claimed at all. A wheel was described, but it was a wheel made after a particular pattern or form, and adjusted to a particular apparatus for the reception and discharge of the water. * * * Instead of correcting inadvertent mistakes in the specifications, which rendered the patent inoperative and void, the patented descriptions are evidently intended to widen the scope of the patent, and make it embrace more than it did at first. The mistake of the patentee, or his assigns, seems to have been

in supposing that he was entitled to have inserted in a reissue patent all that he might have applied for and had inserted in the original patent. * * * A reissue can only be granted for the same invention which was originally patented. If it were otherwise, a door would be opened to the admission of the greatest frauds. Claims and pretensions, shown to be unfounded at the time, might, after the lapse of a few years, a change of the officers in the patent office, the death of witnesses, and the dispersion of documents, be set up anew, and a reversal of the first decision obtained without appeal, and without any knowledge of the previous investigations upon the subject. * * * Hence, there is no safe or just rule but that which confines a reissued patent to the same invention * * * which was described or indicated in the original."

Bearing in mind now that the reissue must be for the same invention as the original patent, and that the fact that the patentee might have applied for and had inserted in his original patent all that he now claims is so conclusive evidence that his reissue is valid, let us examine the reissue under consideration in the light of these authorities. Is it for the same invention as the original? In the original patent, No. 124,590, the patentee specifies his invention in the following precise and unequivocal language:

"The invention consists (1) in a peculiarly-shaped double throat-piece; (2) in a mode of attaching and supporting removable dies; (3) in giving the dies convex sides, so as to secure the filling of corners and produce concave or recessed bricks; (4) in a yielding box, to receive the proper length of clay for one or more sets of bricks, and to hold the same while the bricks are being severed; (5) in a sliding cut-off adapted to sever the bricks at each end; (6) in a combination of cam, forked lever, and connecting rod for operating the cut-off; (7) in driving the cut-off from the tub-shaft: (8) in an expelling screw cast with a shaft-socket and feather."

It will thus be seen that this statement of his invention, as well as the eight claims made in the original patent, relate solely to that portion of the machine in front of the forward standard, at the point where the clay passes beyond the action of the screw and is moulded to pass through the dies. There is no intimation that he claims any novelty in the general construction of the machine, or of its tub or standards, or of any combination by which the tub is attached to the standards, or the standards are held in place and prevented from spreading; although it is true that the drawings annexed to his patent show a machine completed in all these particulars. This patent was issued March 12, 1872. The defendants began building machines similar in their general construction to complainant's machine, but avoiding the use of that portion of the machine covered by complainant's patent, in the fall of 1877. In July, 1879, complainant

applied for a reissue, in which he states his invention as before, but enlarges very greatly its scope:

"The subject of my invention is a horizontal brick machine, constructed with a tub supported at its ends in suitable standards, and with a nose-piece or die-holder projecting forward from one of the standards, and adapted for the attachment of suitable dies, which are formed to deliver the clay in one or more horizontal columns on the edge instead of flatwise, as heretofore; the advantages of running the clay on edge being that they are less liable to distortion, and in better shape for cutting into bricks. My invention further consists of a brick machine having a horizontal shaft provided with a collar in rear of one of its bearings to confine the shaft against forward movement when the machine is running empty."

Four additional claims are made, none of which have any relation to the claims made in the original patent. Now, if it be true that the patentee may claim in his reissue anything which was suggested in the drawings of the original patent, this reissue is valid; but if he is confined to what he declares is his invention in his original patent, then it is invalid. There is nothing here tending to show that his original patent was inoperative or invalid by reason of a defective or insufficient specification. On the contrary, his specifications are full and complete, and his claims appear to cover everything which he set forth as his own invention. There is no attempt to amend the claims contained in the first patent. There is not even an attempt to enlarge the scope of these claims, but there are four new and distinct claims made to parts of the machine, to which no reference is made in the original patent as his invention. Indeed, a comparison of the two specifications precludes the idea of inadvertence, accident, or mistake, since all but two of the claims of the original patent are reproduced in the reissue; and there is no pretence that this patent was inoperative or invalid as to anything therein claimed to be the patentee's invention. It appears to be a case where the patentee has materially enlarged the scope of his patent for the purpose of reaching those who are constructing machines after the same general design as his own. Upon the best consideration I have been able to give to this matter, I have come to the conclusion that this reissue cannot be supported, and that as to these four claims it is void.

Proceeding now to the second patent in this suit, reissue No. 8,127, dated March 19, 1878, the original of which was issued May 23, 1876, an objection is taken to the first claim upon the ground that this claim was made in the original patent and rejected; that the patentee acquiesced in this rejection, and therefore cannot make the same

claim in the reissued patent. It is true that in the case of *Leggett* v. *Avery*, 101 U. S. 256, it is said by Mr. Justice Bradley that it is very doubtful whether, where an applicant for letters patent, in order to obtain the issue thereof, acquiesces in the rejection of a claim thereto, a reissue containing such claim would be valid. In that case, however, on the surrender of the original letters there was a disclaimer of a part of the invention described by them, filed by the patentee in the patent office, and reissued letters were granted for the remainder. Afterwards, in the second reissue, the disclaimed inventions were embraced, and it was held that the patentee could not sustain a bill to restrain the infringement of them. The decision upon this point is not easily reconcilable with that of *Smith* v. *Goodyear Dental Vulcanite Co.* 93 U. S. 486, 500, and with the other cases there cited, and, upon the whole, I should not feel inclined, without a more definite ruling upon this point, to hold this claim bad upon that account. It would seem that as the reissue in this case was applied for within two years after the original patent was issued, that this might be considered as rather in the nature of a renewal of his application for the allowance of this claim and for a rehearing of the matter. I do not deem it necessary, however, to express a decided opinion upon this point.

Another objection is taken, which goes to show the foundation of the whole patent. Revised Statutes, § 4886, provides "that any person who has invented or discovered any new or useful art * * * not in public use or on sale for more than two years prior to his application * * * may * * * obtain a patent therefor." There is evidence in this case tending very strongly to show that in August, 1873, a machine, which embodied all the essential features of this patent, was offered for sale by the patentee to Jamison & Afflick, brickmakers, at Chesterton, Indiana. A prior machine, embodying all the material combinations claimed in this patent, was completed by the complainant in 1868, and was tried. Complainant says that this experiment demonstrated the fact, that, if the machine were constructed of sufficient strength, it would be a valuable operating machine. It was laid aside for the present, however, and stood in a shed at Angell's foundry in Adrian during the winter of 1868 and 1869, when it was taken to pieces, and a portion of it saved and put into another machine, which was built in 1872 at Farrar & Dodge's. This machine appears to have had all the material elements of the machine shown and claimed in this patent. In August, 1873, it was sent to Jamison & Afflick, brickmakers, at Chesterton;

and the important question arises whether it was sent there for trial only, or for trial and sale. Afflick, one of the firm, testified that it was shipped to them on terms, as they understood, that they were to buy it if the machine worked satisfactorily; if not, complainant was to pay his own expenses and take the machine back. They kept it, apparently, two or three weeks, and while there it was used experimentally, to see whether it would work or not. It seems that complainant went there for the purpose of testing it, to see if it would run; but it was finally shipped back to Adrian, not being satisfactory to the firm. It is stipulated that Jamison, the other member of the firm, would testify substantially as Afflick did upon this point. The only other direct testimony is that of the complainant himself, who says he sent it there for an experimental machine, to see whether he could get it to do good work. His testimony upon this point is substantially as follows:

"*Question.* Did you not send it away on trial, to be sold or to be bought by Jamison & Afflick if they liked it? *Answer.* Not until after it was tested. *Q.* Didn't you send it there on trial, to be bought by Jamison & Afflick if they liked it? *A.* I did not. *Q.* How did you come to send it up to them? *A.* He came down to see me for repairs on his wheel machine, and we got to talking about machines, and I told him: 'Jamison, if you are a mind to, I will send you that machine awhile to try it, and if it works all right it will be all right.' *Q.* What do you mean by being 'all right;' that the machine would be all right? *A.* So it would work all right. *Q.* How do you mean, work all right? What would be all right? *A.* What would be all right? *Q.* Yes, sir. *A.* It would be all right provided they wanted it. We didn't know whether he wanted it or not. He didn't say whether he wanted it or not. *Q.* If it worked all right were they to take it? *A.* They didn't say they would take it. *Q.* They could take it? *A.* They could if they wanted to. *Q.* Didn't you try to sell it to them? *A.* No, sir; I didn't try to sell it to them. I first wanted to get the machine so I could do something with it, and until I knew it was so I could put it out."

This testimony is, evidently, very evasive, but it leaves a strong impression upon my mind that in reality the machine was sent to Chesterton for sale if satisfactory. There is no reason shown why complainant sent it to a distant place simply for trial, particularly as it appears that he tried the same machine at Condit's yard, in Adrian, before sending it to Chesterton. This trial seems to have proved a failure, and the machine was afterwards put in better condition, and might as well been tried in Adrian again, if all that complainant desired was to experiment with it. I think this is the only direct testimony upon the point. The witness Galloway testifies that he heard the matter talked over between complainant and the one

who was to buy the machine, and that it was shipped to be sold if it suited; that it was afterwards shipped and returned to Adrian. There is also evidence tending to show that complainant, in 1872, endeavored to sell this same machine to one Wiggins, and although this is denied, the matter of the sale of the machine when perfected seems to have been made the subject of a conversation between complainant and him. The machinery was afterwards rebuilt and sold a short time within the two years before application was made. On the whole, the evidence, I think, establishes the fact that this machine was on sale more than two years before application was made for the patent.

The question whether the offer to sell a single machine would be sufficient to avoid the patent was not discussed, and I express no opinion upon the point.

It results that the bill must be dismissed.

Since this opinion was written my attention has been called to an interesting article upon reissued patents, in the November number of the American Law Review. vol. 15, p. 731, in which the learned writer draws the same inferences which I have from the recent adjudications of the supreme court.