### J. L. MOTT IRON WORKS v. STANDARD MANUF'G CO.

(Circuit Court of Appeals, Third Circuit. January 27, 1893.)

1. PATENTS FOR INVENTIONS—COMBINATION—PRIOR ART.
    Where a patent has been obtained for a combination after the patentee has availed himself of all the knowledge derivable from a series of existing devices of a similar character, the claims must be restricted to the precise form and arrangement of parts described in the specifications.

Such a patent is an entirety, and all the parts of the combination must be used, in order to constitute an infringement.

**2. SAME—LIMITATION OF CLAIM—REJECTION AND AMENDMENT.**
Where the claims of an application for a patent are rejected, and thereupon the patentee amends the same by inserting limitations and restrictions, the patent granted thereunder must receive a strict and narrow construction. 51 Fed. Rep. 81, affirmed. Sargent v. Safe & Lock Co., 5 Sup. Ct. Rep. 1021, 114 U. S. 63, and Roemer v. Peddie, 10 Sup. Ct. Rep. 98, 132 U. S. 313, followed.

**3. SAME—PRIOR ART—BATH OVERFLOWS.**
Letters patent No. 170,709, issued December 7, 1875, to William S. Carr, for an improvement in waste valves and overflows for baths and basins, claim: "The tube, a, provided with the collar, i, and lock nut, l, for clamping the slab, m, in combination with the tubular stem, f, of the valve, e, passing through the lock nut, l, and means for sustaining the tube, f, when elevated, substantially as set forth." *Held,* that in view of the prior state of the art, as shown especially by the patent of July 21, 1874, to J. T. Foley, and also of the fact that the above claim was filed as an amendment after the rejection of the original claims, the patent must be limited to the specific mechanism described, and is not infringed by a device which omits some of the elements of the patent without supplying their places with equivalents. 51 Fed. Rep. 81, affirmed.

**4. SAME—COMBINATION—UNPATENTABLE AGGREGATION.**
Claim 2 of letters patent No. 353,147, issued February 22, 1887, to John Demarest, for an improvement in waste valves and overflows for baths and basins, is for a mere aggregation of parts, without co-operating action, and not for a patentable combination.
51 Fed. Rep. 81, affirmed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

In Equity. Suit by the J. L. Mott Iron Works against the Standard Manufacturing Company for infringement of patents. In the circuit court an opinion was rendered upon a motion to compel the filing of depositions. See 48 Fed. Rep. 345. A hearing having been subsequently had upon the merits, the bill was dismissed. 51 Fed. Rep. 81. Complainant appeals. Affirmed.

Francis Forbes, (William Bakewell, on the brief,) for appellant.

Thomas A. Connolly and Joseph B. Connolly, (A. A. Connolly, on the brief,) for appellee.

Before DALLAS, Circuit Judge, and BUTLER and WALES, District Judges.

WALES, District Judge. This is an appeal from a decree of the circuit court of the United States for the western district of Pennsylvania, dismissing a bill for infringement of letters patent No. 170,709, granted to William S. Carr December 7, 1875, entitled "Improvement in Waste Valves and Overflows for Baths and Basins," and also of letters patent No. 358,147, granted to John Demarest February 22, 1887, entitled "Waste Pipe and Valve for Basins." Each one of these patents was for a combination of parts, and not for a primary invention. The first claim of the Carr patent and the second claim of the Demarest patent were alleged to have been infringed. The material portions of the specification in the Carr patent are these:

"Overflows for baths and basins have been made of a vertical pipe passing through the woodwork or slab, and connected at its bottom end with the sewer pipe, and with a branch to the bath or basin, and at the intersection is a seat for a valve at the lower end of an overflow pipe within the said vertical pipe. In this character of overflow the cap for the vertical pipe has been connected to the slab by bolts, and the rod that is used to lift the overflow pipe and valve has passed through this cap. My invention is made for dispensing entirely with the cap, and allowing the upper end of the vertical tube to be filled by a tube that is lifted with the overflow pipe, and which is capable of being withdrawn whenever it is necessary to take out the valve for cleaning."

Referring to the accompanying drawings, the prior state of the art is described as follows:

"The vertical pipe, a, of the overflow, is connected near the bottom by a pipe, b, to the bottom of the bath or basin, and by a pipe, c, to the sewer or escape pipe. The valve seat, d, is below the inlet pipe, b; and when the valve, e, is upon its seat, water can accumulate in the basin or bath until it flows over the edge, 2, of the hollow stem of said valve, e; but when the valve is raised from its seat the contents of such bath or basin will flow off by the pipe, c. The parts thus far described have been known in use heretofore."

Then follows this description of the patented invention:

"My improvement relates to a flange, i, applied around the upper end of the cylinder, a, and a lock nut, l, at the upper end thereof, whereby the table or slab, m, is clamped between such lock nut and the flange, i. * * * The tubular stem, f, of the valve, e, is continued through the lock nut, and of a size to fit the interior thereof loosely; and in this enlarged portion, n, of such stem, there is an L-shaped slot, as seen in Fig. 2, so that a screw or pin, o, passing through the lock nut, may enter this slot, in order that the valve may be held up, after it has been raised, by partially turning the tubular stem, for the pin to enter the horizontal portion of that slot. * * * I do not claim an overflow tube, valve, and tubular stem, nor the device shown in the patent of J. T. Foley, July 21, 1874. I claim as my invention, (1) the tube, a, provided with the collar, i, and lock nut, l, for clamping the slab, m, in combination with the tubular stem, f, of the valve, e, passing through the lock nut, l, and means for sustaining the tube, f, when elevated, substantially as set forth."

Carr's application, as originally filed, contained three claims, the first two of which read as follows:

"(1) The lock nut, l, and collar, i, in combination with the tube, a, pipes, b and c, and removable tubular stem, f, and valve, e, substantially as set forth. (2) The tubular stem, n, passing through the lock nut, l, and provided with means for sustaining said stem when elevated in combination with the valve, e, stem, f, and table, a, substantially as set forth."

These claims were rejected by the patent office November 12, 1875, on the patent of J. T. Foley, July 21, 1874, and because the lock nut, l, and collar, i, have no combination with the other elements of the invention, and, furthermore, that this element of fastening is common. Thereupon Carr amended and limited his claims by withdrawing those first filed, and substituting the first claim that is now found in his patent; and, having adopted this course, the claim in dispute must receive a strict and narrow construction. This principle is well stated in Roemer v. Peddie, 132 U. S. 313, 10 Sup. Ct. Rep. 98, and in Sargent v. Safe & Lock Co., 114 U. S. 63, 5 Sup. Ct. Rep. 1021. In the former case the court said:

"When a patentee, on the rejection of his application, inserts in his specification, in consequence, limitations and restrictions, for the·purpose of obtaining his patent, he cannot, after he has obtained it, claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it."

On an examination of the Foley patent and reissue, it will be seen that almost every element in the Carr combination has been anticipated. In his specification Foley states:

"My invention relates to an improvement that is made for allowing the valve and overflow to be easily removed. For this purpose the valve and its tubular stem is continued up through the marble or wooden slab or table contiguous to the basin or bath, and provided with a removable cap, through which the stem to the handle passes."

Then follows a description of the Foley improvement, illustrated by drawings, from which it appears that the only substantial difference between the Foley and Carr improvements is that the former has the removable cap, and the latter has the collar, i, and the lock nut, 1. The claim in the Foley patent is for a standpipe passing through the slab, and receiving at its upper end a removable cap, in combination with an overflow pipe, valve, and means for suspend-. ing the valve and overflow pipe from the cap. In explanation of the drawing the specification states that passing through the cap is a rod with a handle at the upper end, and at the lower end is connected by a bridge or bail with the tubular stem that is within the vertical tube. This rod is so made that when it is raised, and partially revolved, it will suspend the tubular stem and valve. "The defendant's waste," which is complained of as infringing both the Carr and the Demarest patents, bears a closer resemblance to the Foley patent than it does to either of the others. It is described, with reference to a drawing, as follows:

"A standpipe, A, a cap, B, screwing upon the upper end of the said standpipe, and having a vertical flange, b, screw threaded internally and exteriorly; a ring or nut, C, screwed upon the outside of said flange; an overflow tube, D, provided with a handle portion or stem, E, and having upon its lower end a valve. The inwardly projecting horizontal portion of the cap is notched at a, and the handle portion of the overflow pipe is provided with two lugs, d and e, which, when the overflow pipe is turned, respectively coincide with this notch, and allow the overflow pipe to be raised. When the overflow pipe is so raised, it may be supported by one of the lugs resting upon the top of the cap B, the overflow pipe being turned after the lug has passed through the notch, a. The ordinary or usual operation of raising the overflow pipe to allow the water to escape under the valve is simply to lift it sufficiently to raise the uppermost lug out of the notch, a, and then turn the overflow pipe. While the overflow pipe is in this position, it is prevented from being suddenly or violently raised too high, or unintentionally withdrawn from the standpipe, by the lower lug on the handle of the overflow coming in contact with the underside of the cap, B. When it is desired to withdraw the overflow pipe entirely from the standpipe, it is first turned until the uppermost lug can be drawn through the notch, and after such withdrawal the tube is again turned until the lowermost lug can be withdrawn, after which the overflow pipe may be entirely lifted out."

By comparing these different structures, which have just been described, one with another, it will be noticed that the defendant's waste does not make use of the collar, i, or of the lock nut, 1, or of the L-shaped slot, called for in the Carr patent. Neither does it substi-

tute an equivalent for any of them. In the defendant's waste the tubular stem can be removed without disturbing any of the other parts, while in the Carr patent the screw or pin, o, must be taken out before the tubular stem can be withdrawn. There is no novelty in Carr's mode of clamping the slab, m, and, if there was, a glance at the defendant's waste will discover that the latter employs wholly a different combination for attaching the standpipe to the slab of the bath or basin. If Carr made any improvement over the Foley device, the advance was but a slight one. It is sufficient to say, without discussing further the merits of Carr's invention, that it has not been infringed by the defendant.

The claim of the Demarest patent alleged to be infringed reads as follows:

"(2) The combination with the horizontal waste pipe, C, and vertical standpipe, E, of the socket, G, screwed upon the exterior of the standpipe, E, and having a flange resting upon the slab, and an inwardly projecting pin, 17, the overflow pipe and valve within the standpipe, the tubular cap, P, screwed upon the exterior of the overflow pipe, and slotted for the reception of the pin, 17, and the lock nut, 16, at the lower end of the tubular cap, P, substantially as and for the purposes set forth."

This claim contains three separate and distinct groups of devices, each group performing different functions from either of the others, and all of them do not act conjointly. The first group contains the socket, G, screwing upon the standpipe, E, which covers the particular means for attaching these parts together. The second group, consisting of the pin, 17, in the socket, G, and of the slot in the cap, P, provides for sustaining the overflow tube when elevated, and for the withdrawal of the overflow pipe from the standpipe. In the third group the tubular cap, P, is screwed upon the overflow tube, and is secured thereto by the lock nut, 16. There is no co-operative action of these distinct claims which produces a unitary result. Each one acts separately and independently of the other. In Reckendorfer v. Faber, 92 U. S. 347, a patentable combination is defined as one which must produce a different force, effect, or result in the combined forces or processes from that given by their separate parts. There must be a different result produced by their union; otherwise, it is only an aggregation of separate elements. This definition has been approved in Pickering v. McCullough, 104 U. S. 310, and in Hendy v. Iron Works, 127 U. S. 370, 8 Sup. Ct. Rep. 1275. It has been repeatedly held that a mere aggregation of old elements in a new relation is not the subject of a patent. Hailes v. Van Wormer, 20 Wall. 353; Union Edge Setter Co. v. Keith, 139 U. S. 539, 11 Sup. Ct. Rep. 621; Royer v. Roth, 132 U. S. 201, 10 Sup. Ct. Rep. 58. It is obvious that the second claim of Demarest does not come within this definition. But, as was pointed out by the circuit court, if a different construction were to be given to this drawing, no infringement has been shown; for the defendant does not employ the inwardly projecting pin, 17, and the slots in the tubular cap, P, but means substantially different.

The defendant's exhibits present a long catalogue of waste devices for baths and basins. Carr and Demarest availed themselves of the knowledge of what had already been accomplished in this

special line when making the combinations respectively claimed by them. When a valid patent has been obtained under such conditions, the claims of the patentee must be restricted to the precise form and arrangement of parts described in the specification. Such a patent is an entirety, and it is a familiar principle that all the parts of the combinations must be used by the defendant in order to constitute an infringement. Howe v. Neemes, 18 Fed. Rep. 40; Matteson v. Caine, 17 Fed. Rep. 525; Bragg v. Fitch, 121 U. S. 478, 7 Sup. Ct. Rep. 978; Railway Co. v. Sayles, 97 U. S. 554.

After a full consideration of the whole case, we have found no reason to doubt the correctness of the conclusions arrived at by the circuit court, and its decree is therefore affirmed.