## ELBS v. ROCHESTER EGG CARRIER CO.

(District Court, W. D. New York.   July 22, 1912.)

### No. 478.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—EGG CARRIER.

The Jenne patent, No. 722,512, for an egg carrier consisting of a pasteboard case with egg cells, for carrying and delivering eggs to consumers, covers a narrow improvement on prior structures and is limited to a combination of a cover with flaring flanges and partition strips between the cells having the upper portion of the ends next the side of the case cut away to receive the flanges of the cover, which thus have a cushioning effect affording an additional protection to the eggs. As so construed, *held* not infringed.

In Equity.   Suit by John G. Elbs against the Rochester Egg Carrier Company.   On final hearing.   Decree for defendant.

Church & Rich, of Rochester, N. Y. (Frederick F. Church, of counsel), for complainant.

George P. Keating, of Buffalo, N. Y. (Harold H. Simms, of counsel), for defendant.

HAZEL, District Judge.   The bill alleges infringement of letters patent No. 722,512, granted March 10, 1903, to Henry S. Jenne for improvements in egg carriers.   The device relates to a receptacle for safely carrying eggs from the place of sale to the consumer, and consists of two principal parts—the carrier part and the cover. The carrier part, made reasonably strong and a trifle higher than the length of an egg, is ordinarily rectangular in form and adapted for carrying 12 eggs; the bottom thereof being constructed to give a yielding support for the eggs placed in an upright position in the egg cells which are formed by strips of cardboard running lengthwise and across the carrier.   The cover is tray-shaped with flaring edges, and is made to fit over the tops of the eggs within the walls of the carrier with the inner side downward.   It is held in place by a fastening device consisting of a rod extending across the upper surface of the carrier and sliding longitudinally in grooves on the outer sides of the case.

The patent has nine claims, but claims 2 and 6 only are in controversy.   They read as follows:

2. An egg carrier consisting of a case provided with partitions forming egg-receiving pockets, a removable cover formed with a flange interposed between the walls of the case and ends of the upper portions of the partitions, and means adjustably connected to the case for engaging and releasing said cover as set forth.

6. In an egg carrier, the combination of a case provided with partitions having the upper portions of their end edges clear from the interior of the case, and a tray-shaped cover disposed inverted in the case and having its flanges passing across the clear portions of the ends of the partitions as set forth.

The elements of claim 2 are:  (1) A case with partitions or pockets for holding the eggs;  (2) a cover with a flange, the flange inter-

posed between the walls of the case and the partitions; and (3) a fastening device for holding the cover in place over the tops of the eggs. Claim 6 is substantially the same as claim 2, save that the latter includes means for releasing the cover, and specifies that the partition strips at their upper parts shall be clear from the interior of the case, while the former claim provides that the flared part of the cover shall be "interposed between the walls of the case and ends of the upper portions of the partitions."

The words "as set forth," at the end of the claims, necessitate reference to the description to ascertain their scope. The defenses are invalidity and noninfringement. An examination of the record satisfies me, assuming the validity of the claims in controversy, that they are entitled only to strict construction, and are limited in scope to a cutting away of the upper portions of the ends of the partitions in such a way as to clear the edges from the interior of the frame enabling the flared portions of the cover to rest next to the interior walls of the carrier on the cleared portions of the partitions. The patentee was not the first to construct an egg carrier of the kind under consideration, as such devices had been in use in one form or another for many years. He, however, was the first to combine an egg carrier having cells or pockets for containing the eggs, with a cover having flaring flanges to be inverted over the eggs placed upright in the cells. The file wrapper and contents show that the Patent Office was of the opinion that the novelty of the claims consisted in the combination of a cover with flaring flanges and cut away partition strips within the walls of the case; the latter being the essential element. The original claim 3, the cancellation of which supports this view, was broadly for a tray-shaped cover placed inverted over the pockets; but the aforesaid inclusion of the cut away portions of the partitions for the accommodation of the flanges is a limitation which must accompany the claims to insure their validity. J. L. Mott Iron Works v. Standard Mfg. Co., 53 Fed. 819, 4 C. C. A. 28; Roemer v. Peddie, 132 U. S. 313, 10 Sup. Ct. 98, 33 L. Ed. 382; Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 5 Sup. Ct. 1021, 29 L. Ed. 67. This construction is supported by the prior art.

The Fisk patent, for instance, granted 1882, relates to the manner of delivering eggs in suitable carriers having trays with pockets or cells in them for holding eggs, and attached cords for lifting the trays from the case. The Dorn & Shibley patent, No. 89,133 carries the eggs for safe transportation in cells or pockets corresponding to the size of an egg, and covers them with a tray of canvas with interior partitions into which the eggs can be transferred by inverting the carrier. The patent to Schaeffer, granted 1877, shows a paper tray or cover which may be readily affixed to the carrier, but which has no flared flange as has the patent in suit. The Perkins patent No. 449,330, defendant's best reference, comes close to containing the combination in suit. In that patent are described a carrier having cells or partitions made of cardboard strips, and a flanged cover. The flange does not flare, and this difference seems to be the only appreciable difference between the two carriers, except that in the Per-

kins carrier the cover, although inserted within the side walls of the carrier, rests directly above the egg pockets and not between the walls of the case and the partition strips, as in complainant's carrier. The Wright patent, No. 371,159 discloses a flanged cover the flanges of which rest between the top edges of the partitions and the side walls of the case. In view of such Perkins, Schaeffer, and Wright structures it was not, in my opinion, invention simply to flare the flange of the tray resting on the partition strips without the additional feature of cutting away the partitions at the outer edges to enable placing such flared portion adjacent to the side walls of the case, and on top of the cleared partitions. While it may be true that the flaring edges of complainant's cover impart a so-called cushioning effect and additional protection for the eggs, yet any such effect is attributable to the combination of the cutting away of portions of the strips together with the flaring of the flange. The defendant by its adaptation probably achieves a result not widely different from that achieved by complainant, although the protection to the eggs by a cushioning effect is not present.

It is not enough that defendant's carrier performs the same functions as the patent in suit. If practically the same result is attained by means which are not an appropriation of the Jenne invention, a case of infringement is not made out. The defendant's egg carrier consists of a pasteboard case having a perforated bottom and egg cells, but the side partitions are not cut away as in complainant's carrier to permit the cover to rest on top of the eggs between the cut off portions and the side walls. The tops of the partitions in the defendant's structure abut the side walls at each end, and there is a marginal space within the interior of the receptacle within which is placed, on top of the eggs, a tray or cover retained in position by arch-shaped rods affixed to each end of the interior of the receptacle. The tray though flared at the edges is not used to secure a cushioning effect, but by means of its flared edge it becomes a support while in place and also receives and holds the eggs when the carrier is inverted.

No particular mention is made herein of the feature relating to the method of holding the cover or tray in place, and my understanding is that it is not claimed that the bails placed at each end of defendant's receptacle infringe the bar and groove arrangement of the patent in suit. The use of pivoted bails at each end of a carrier as in defendant's receptacle, for holding the cover in place on top of the eggs, was an old device and is shown in the Kjesbu & Stenson patent.

Although the patentee has made a slight improvement over the prior art by providing means for better protection of the eggs contained in the receptacle during delivery, yet, if there was invention (any existing doubt as to patentability I resolve in his favor), it must, in view of the prior art, be regarded of such meagerness as to call for so narrow a construction of the claims in controversy as to exonerate the defendant from the charge of infringement notwithstanding any similarities in appearance between its structure and complainant's.

The bill is dismissed, with costs.